UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

TONYA SKELTON AND                   CIVIL ACTION NO. 6:16-cv-00289
SLADE MATURIN

VERSUS                              MAGISTRATE JUDGE HANNA

IBERIA PARISH SCHOOL BOARD,         BY CONSENT OF THE PARTIES
ET AL.

## MEMORANDUM RULING

Currently pending is the motion to dismiss under Fed. R. Civ. P. 12(b)(6) and

alternative motion for summary judgment under Fed. R. Civ. P. 56 (Rec. Doc. 28),

which was filed by the defendants, Iberia Parish School Board, Superintendent Dale

Henderson, New Iberia Senior High School Principal Curt Landry, and New Iberia

Senior High School Assistant Principal James Picheloup. The motion is opposed.

Considering the evidence, the law, and the arguments of the parties, and for the

reasons fully explained below, the motion is GRANTED, the plaintiffs'

Constitutional claims are DISMISSED WITH PREJUDICE, and the plaintiffs' state-

law claims are DISMISSED WITHOUT PREJUDICE.

## FACTUAL FINDINGS

During lunch period at New Iberia Senior High School on March 5, 2015, Ja'Tory Marks[1] tried to start a fight with Slade Maturin. Assistant Principal Robert Schlicher got between them, restrained Ja'Tory, and with the help of another student moved Ja'Tory away from Slade. As he was standing behind Mr. Schlicher, Slade raised his fists and threw several punches. Although Slade denied striking Mr. Schlicher, Mr. Schlicher claimed that he was struck on the back of the head. This incident was captured on surveillance video.

The United States Supreme Court has stated that, even at the summary judgment stage, the facts should be viewed in the light depicted by a videotape of the incident.[2] As noted by the Fifth Circuit, "we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."[3] Nonetheless, the video must be viewed by the Court from the perspective

---

[1]     This young man's name is spelled various ways in the record. This Court adopts the spelling used by the defendants in their briefing.

[2]     *Scott v. Harris*, 550 U.S. 372, 381 (2007).

[3]     *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011). See, also, *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

of a reasonable officer.[4]  Thus, this Court's analysis will focus to the maximum extent possible on the factual scenario depicted on the school's surveillance video.

The video clearly shows Mr. Schlicher walking down the hall toward Ja'Tory and getting between Ja'Tory and Slade.  It shows Mr. Schlicher grabbing onto Ja'Tory and moving him down the hall away from Slade.  The video also clearly shows Slade forming his hands into fists and throwing punches near the back of Mr. Schlicher's head, but it is not clear whether any of the punches actually contacted Mr. Schlicher's head.

Ja'Tory and Slade were both taken to the principal's office.  Assistant Principal Picheloup called Slade's mother, plaintiff Tonya Skelton, and she went to school, allegedly arriving as Slade was being taken to jail in handcuffs.  Slade was arrested by the school resource officer, Iberia Parish Sheriff's Deputy Ashley Charles Stevens, and charged with battery on a school teacher and disturbing the peace.  Slade was allegedly detained at the Iberia Parish jail for a few hours before his mother bailed him out.  The charges against Slade were eventually dropped.

As a result of this incident, Slade was recommended for expulsion.  After the Child Welfare Supervisor, Joel McFarland, watched the video, however, he

---

[4]    *Foster v. Carroll County*, 502 Fed. App'x 356, 359 (5th Cir. 2012).

determined that the video showed Slade swinging at least twice but did not actually show Slade striking Mr. Schlicher, and Slade was not expelled.

Slade Maturin and his mother, Tonya Skelton, are the plaintiffs in the lawsuit. They sued the Iberia Parish School Board, school superintendent Dale Henderson, New Iberia Senior High School Principal Curt Landry, and Assistant Principal James Picheloup. They asserted claims under 42 U.S.C. §§ 1983 and 1988 as well as under Louisiana law. The Section 1983 claim is based on allegations that the defendants deprived Slade of his Fourth Amendment right to be free from unlawful search and seizure and deprived him of his Fourteenth Amendment right to due process. More particularly, the plaintiffs contend that the School Board caused Slade to be arrested and charged with committing criminal offenses, that the defendants sought criminal prosecution of Slade, and that Superintendent Henderson failed to ask the District Attorney to dismiss the charges when the plaintiffs' counsel asked him to do so. They also claimed that Slade was defamed, maliciously prosecuted, and falsely arrested.

## LAW AND ARGUMENT

### A. THE DEFENDANTS RULE 12(b)(6) MOTION IS UNTIMELY

The pending motion is styled as an alternative Fed. R. Civ. P. 12(b)(6) motion and motion for summary judgment under Fed. R. Civ. P. 56. Although Rule 12(b) states that a motion asserting any of the defenses listed in that rule "must be made

before pleading if a responsive pleading is allowed," the defendants filed their answer to the plaintiffs' complaint (Rec. Doc. 7) more than a year before they filed the instant motion. Rule 12(b)(6) relief is unavailable when the moving party has already filed a responsive pleading.[5] Therefore, the motion to dismiss was untimely filed.[6]

However, an untimely filed Rule 12(b)(6) motion may be treated as a Rule 12(c) motion for judgment on the pleadings,[7] and a motion to dismiss under Rule 12(b)(6) is subject to the same standard as a motion for judgment on the pleadings under Rule 12(c).[8] Therefore, it would be appropriate for this Court to treat the defendants' Rule 12(b)(6) motion as a Rule 12(c) motion.

**B.** **THE SUBMISSION OF EXTRANEOUS MATERIALS REQUIRES THE MOTION TO BE CONSIDERED A MOTION FOR SUMMARY JUDGMENT**

Fed. R. Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the

---

[5]     *Young v. City of Houston*, 599 Fed. App'x 553, 554 (5th Cir. 2015).

[6]     *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) ("Because a rule 12(b) motion must be filed before responsive pleadings, the appellees' motion was untimely.").

[7]     *Jones v. Greninger*, 188 F.3d at 324.

[8]     *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002).

motion." When considering a Rule 12(b)(6) or a Rule 12(c) motion, a court has complete discretion to consider documents other than the complaint[9] if those documents are attached to the motion, referenced in the complaint, and central to the plaintiff's claims.[10] If a court considers materials outside of the pleadings, however, the motion must be treated as a motion for summary judgment,[11] and the nonmovant must be afforded the procedural safeguards of Fed. R. Civ. P. 56.[12] If the court does not rely on materials beyond the complaint, however, it need not convert the motion to dismiss into one for summary judgment since the parties' submission of extraneous materials does not automatically convert a motion to dismiss into a motion for summary judgment.[13]

In this case, the defendants styled their motion as an alternative motion for summary judgment, and they submitted evidence beyond the scope of the complaint along with their motion, including deposition excerpts, affidavits, official records,

---

[9]    *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414-15 (5th Cir. 1980).

[10]    *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins v. Morgan Stanley*, 224 F.3d at 498–99.

[11]    Fed. R. Civ. P. 12(d).

[12]    *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990).

[13]    *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015); *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir. 1995).

and a videotape. The plaintiffs attached deposition excerpts to their opposition brief. This Court finds that the additional evidence submitted by the parties is important to the resolution of the issues presented in the pending motion. Therefore, this Court will consider the motion solely as a motion for summary judgment and not as a motion for judgment on the pleadings. This Court further finds that the parties need not be afforded additional time for briefing or discovery because the defendants styled their motion as an alternative motion for summary judgment, putting the plaintiffs on notice that they should respond to that type of motion. Accordingly, no additional safeguards need be implemented. Pursuant to Rule 12(d), because "matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56." [Emphasis added].

## C. THIS COURT WILL NOT CONSIDER THE NEW ARGUMENT OR THE EXHIBIT SUBMITTED WITH THE DEFENDANTS' REPLY BRIEF

In addition to submitting extraneous materials along with their motion, the defendants also submitted an exhibit along with their reply brief and argued for the first time that a school board policy requires cooperation between school personnel and law enforcement. The exhibit, a copy of an alleged policy issued by the Iberia Parish School Board concerning relations with law enforcement authorities, will not be considered. First, the exhibit is not authenticated in any way. Second, this Court

ordinarily does not consider arguments raised for the first time in a reply brief.[14] Similarly, evidentiary exhibits submitted along with a reply brief are not considered because the non-moving party does not have a meaningful opportunity to respond.[15] Accordingly, neither the alleged policy itself nor the argument based on the alleged policy will be considered in ruling on the motion for summary judgment.

## D.    THE STANDARD FOR RESOLVING A MOTION FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[16] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[17]

---

[14]    *United States v. Aguirre-Villa*, 460 F.3d 681, 683 n. 2 (5th Cir. 2006;) *United States v. Jackson*, 50 F.3d 1335, 1340 n. 7 (5th Cir. 1995).

[15]    *Springs Industries, Inc. v. American Motorists Ins. Co*., 137 F.R.D. 238, 239 (N.D. Tex. 1991).

[16]    *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex*., 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).

[17]    *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 252); *Hamilton v. Segue Software, Inc*., 232 F.3d at 477.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[18]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[19]   All facts and inferences are construed in the light most favorable to the nonmoving party.[20]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[21]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[22]

---

[18]     *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[19]     *Washburn v. Harvey*, 504 F.3d at 508.

[20]     *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

[21]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[22]     *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

E. **THE STANDARD FOR EVALUATING A SECTION 1983 CLAIM**

The complaint states that the plaintiff's claims are brought pursuant to 42 U.S.C. §§ 1983 and 1988 as well as under Louisiana law. Section 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another person's Constitutional rights. Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[23] To state a section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.[24]

F. **THE SECTION 1983 CLAIMS**

1. **NO SECTION 1983 CLAIM WAS ASSERTED BY MS. SKELTON**

The nature of Ms. Skelton's claim against the defendants is unclear. She seeks to recover for mental anguish, fear that her son would be imprisoned, humiliation regarding her son's arrest, and loss of consortium. She also seeks to recover attorneys' fees. Perhaps her claim is a Louisiana state-law claim for intentional

---

[23] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).

[24] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

infliction of emotional distress or a Louisiana state-law claim for bystander damages, but there is no federal-law component of her claim. More specifically, the complaint does not allege that her Constitutional rights were violated in any way.

Ms. Skelton claims that Mr. Landry, the high school principal, told her that there was a video that clearly showed Slade hitting Mr. Schlicher in the back of the head. She complained that she was not able to see the video until five days after the incident and that the tape actually does not show Slade landing a blow. She alleged that after he was arrested Slade's picture was on television and in the newspaper, subjecting both of them to public humiliation. Even if all of those allegations are true, they do not articulate a Constitutional violation and consequently do not form the basis for a Section 1983 claim against the defendants named in this lawsuit.

## 2. THE SECTION 1983 CLAIM AGAINST THE SCHOOL BOARD

"To pursue a claim under § 1983. . . against a school district, a plaintiff must show that the action was taken pursuant to an officially adopted policy of the school district."[25] A local governmental entity such as the Iberia Parish School Board can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a

---

[25]    *Davis v. Killeen Independent School District*, No. 6-14-CV-336-WSS-JCM, 2015 WL 12967808, at *4 (W.D. Tex. Sept. 29, 2015), *affirmed*, 643 Fed. App'x 451 (5th Cir. 2016), (citing *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001)).

federally-protected right.[26]  To find a school district liable under Section 1983, the plaintiffs must prove three elements:  "a policymaker; an official policy; and a violation of a constitutional right whose 'moving force' is the policy or custom."[27]

Here, the plaintiffs did not allege that the School Board enacted any policy that led to Slade's arrest or prosecution, nor did they identify any person, including any of the three individually named defendants, as having been instrumental in the creation of any policy that might be relevant to Slade's arrest.  There are no genuinely disputed issues of material fact, and the plaintiffs simply have not satisfied their burden of proof with regard to their claim against the School Board.  Therefore, the plaintiffs' Section 1983 claim against the School Board will be dismissed.

### 3.    THE SECTION 1983 CLAIM AGAINST SUPERINTENDENT HENDERSON

The plaintiffs asserted a Section 1983 claim against Iberia Parish Superintendent of Schools Dale Henderson.  It is unclear whether this claim was asserted in his individual capacity or in his official capacity.  "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[28]  In a Section 1983 action, a supervisory official may be held

---

[26]    *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[27]    *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[28]    *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).

liable only if: (a) he affirmatively participated in the acts that resulted in a constitutional deprivation; or (b) he implemented unconstitutional policies that resulted in the plaintiff's injury.[29] To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiff must show that the supervisor acted or failed to act with deliberate indifference to the violation of others' constitutional rights committed by their subordinates.[30] Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action."[31]

In this case, there is no allegation that Superintendent Henderson was present at New Iberia Senior High School on the day in question or that he participated in any way in the decision to arrest Slade and charge him with criminal offense. Similarly, there is no allegation that Superintendent Henderson instituted a policy that was being followed by the principal and assistant principal when they dealt with the incident involving Slade and Ja'Tory. The only factual allegation set forth in the complaint with regard to Superintendent Henderson is that he failed to intervene in an effort to have the District Attorney drop the charges against Slade when asked by the

---

[29]     *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Gates v. Texas Depot of Prot. & Reg. Serve.*, 537 F.3d 404, 435 (5th Cir. 2008).

[30]     *Porter v. Epps*, 659 F.3d at 446.

[31]     *Porter v. Epps*, 659 F.3d at 446-47; *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011).

plaintiffs' counsel to do so. However, the plaintiffs presented no evidence in support of that allegation. More particularly, it is alleged that, after it was decided that Slade would not be expelled and after the plaintiffs' attorney demanded in writing that he do so, Mr. Henderson "continued the prosecution." But there is no evidence that the School Board or Mr. Henderson had anything to do with arresting Slade, bringing charges against Slade, or prosecuting Slade. Slade was arrested by the school resource officer, an Iberia Parish Sheriff's deputy. Slade was charged with a crime by the Iberia Parish District Attorney's office. No evidence was presented with regard to whether Mr. Henderson did or did not contact the District Attorney's office with regard to Slade's case at any time. Therefore, there is no evidence that Mr. Henderson either acted or failed to act with deliberate indifference to the constitutional violations allegedly committed by the school system employees, Mr. Landry and Mr. Picheloup. "A complete failure of proof concerning an essential element of the nonmoving party's case is fatal and entitles the moving party to judgment as a matter of law."[32]

Furthermore, the evidence presented by the defendants establishes that Mr. Schlicher attempted to have the charges against Slade dropped. After the expulsion

---

[32] *Ledesma v. Swartz*, No. 2:96-CV-0491, 1998 WL 355480, at *2 (N.D. Tex. June 26, 1998) (citing *Celotex v. Catrett*, 477 U.S. at 322-23).

hearing, Mr. Schlicher called New Iberia City Prosecutor Ann Stevens and told her he wanted to drop the charges; upon learning that the Iberia Parish District Attorney's Office was handling the case, he telephoned Assistant District Attorney Angelique Narcisse and told her that he wanted to drop the charges. (Rec. Doc. 28-2 at 18). Ms. Narcisse advised that "whether or not Mr. Slade Maturin was prosecuted was not my decision to make." (Rec. Doc. 28-2 at 19). The defendants submitted Ms. Narcisse's affidavit, in which she confirmed that Mr. Schlicher telephoned her and asked that the charges be dropped and also confirmed that under Louisiana law the decision whether or not to accept or refuse charges lies solely within the discretion of the prosecutor's office. (Rec. Doc. 28-4 at 13). Ultimately, however, she did decide to refuse the charges. (Rec. Doc. 28-4 at 13). This evidence is important, first, because it correctly reflects the fact that it was not the School Board or any school system employee who was in charge of the prosecution, and second, because it shows that efforts were made by school personnel to seek to have the prosecution stopped. With regard to the plaintiffs' claims against Mr. Henderson, however, the plaintiffs have failed to present an evidentiary basis, and all of the plaintiff's claims against Mr. Henderson will be dismissed.

**4. THE OFFICIAL CAPACITY CLAIMS AGAINST HENDERSON, LANDRY, AND PICHELOUP**

It is not clear from the plaintiffs' complaint whether Superintendent Henderson, Principal Landry, and Assistant Principal Picheloup were sued under Section 1983 in their official capacities or in their individual capacities. To the extent that they were sued in their official capacities, however, the claims against them are redundant of the plaintiffs' claim against the School Board. Because the plaintiffs have not presented evidence establishing a valid claim against the School Board, they similarly have presented no evidence of official capacity claims against Mr. Henderson, Mr. Landry, and Mr. Picheloup. Even if the plaintiffs had asserted a valid claim against the School Board, however, the official capacity claims against the individual defendants would be dismissed as redundant of that claim.

"A judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents."[33] Therefore, it is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability."[34] When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official

---

[33]     *Deshotels v. Village of Pine Prairie*, No. 11-CV-2052, 2012 WL 1712358, at *4 (W.D. La. Apr. 13, 2012).

[34]     *Howell v. Town of Ball*, No. 12-951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012), citing *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.[35]  In keeping with this principle, this Court finds that the plaintiffs' claims against the individual defendants in their official capacities are redundant of the claims asserted against the School Board, and those claims are dismissed.

### 5.  THE INDIVIDUAL CAPACITY CLAIMS AGAINST LANDRY AND PICHELOUP

As stated above, it is not clear whether Mr. Landry and Mr. Picheloup are being sued in their official capacities or their individual capacities.  However, the plaintiffs contend that the defendants violated Slade's Fourth and Fourteenth Amendment rights to be free of unlawful search and seizure and due process of law; (2) malicious prosecution; and (3) defamation.

To the extent that the plaintiffs are basing their Section 1983 claims against the defendants on allegations of defamation and malicious prosecution, the claims must be dismissed because defamation is a state-law tort, and the Fifth Circuit does not recognize an independent federal cause of action for malicious prosecution.  The Fifth

---

[35]      See, e.g., *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261(5th Cir. 1996).

Circuit has clearly stated that malicious prosecution claims under Section 1983 are not actionable independent of another constitutional violation, and therefore, in the absence of a separate constitutional violation, the plaintiffs cannot pursue a Section 1983 claim for malicious prosecution.[36]  In other words, a malicious prosecution claim, like a defamation claim, is purely a state-law claim that cannot be remedied under Section 1983.  Therefore, to the extent that the plaintiffs' Section 1983 claims are premised on malicious prosecution or defamation, the claims must be dismissed.

The plaintiffs contend that the defendants violated Slade's Fourth Amendment right to be free from false arrest and his Fourteenth Amendment right to due process. It is unclear from the complaint if the plaintiffs are contending that there was a due process violation separate and apart from Slade's arrest.  If so, no evidence to support that claim was submitted in connection with the pending motion for summary judgment.

As a result of this incident, Slade was recommended for expulsion.  After the Child Welfare Supervisor, Joel McFarland, watched the video, however, he determined that the video showed Slade swinging at least twice but did not actually show Slade striking Mr. Schlicher, and Slade was not expelled.  (Rec. Doc. 28-4 at

---

[36]     *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003)).

1-2). Therefore, it is undisputed that Slade was afforded a hearing in connection with the recommendation that he be expelled from school and the result of that hearing was that he was not expelled. Certainly, there is no allegation that he was denied due process in connection with the expulsion hearing.

The plaintiffs emphasize in their briefing that Slade allegedly was not questioned before being arrested. Perhaps that is the source of the contention that his Fourteenth Amendment rights were violated. But the plaintiffs directed this Court to no statutory or jurisprudential authority for the proposition that a person must be questioned before he can be arrested, particularly when the relevant altercation was captured on videotape. This Court finds that the plaintiffs have presented no evidence supporting their contention that the defendants violated Slade's Fourteenth Amendment due process rights.

The defendants argued that they are entitled to qualified immunity with regard to the Section 1983 claim based on the alleged violation of Slade's Fourth Amendment rights. The Fourth Amendment right to be free from false arrest, i.e., arrest without probable cause, was clearly established at the time of Slade's arrest.[37] But "law enforcement officials who 'reasonably but mistakenly conclude that

---

[37]     *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206-07 (5th Cir. 2009).

probable cause is present' are entitled to immunity."[38]  In this case, however, we need

not reach qualified immunity because none of the defendants named in this lawsuit

arrested Slade.

An arrest requires either physical force or submission to the assertion of

authority.[39]  It is axiomatic that an arrest is a seizure, analyzed under the Fourth

Amendment.  "The Fourth Amendment, which applies to the states through the

Fourteenth Amendment, bars unreasonable governmental searches and seizures."[40]

The Fourth Amendment requires that a seizure be objectively reasonable.[41]

Therefore, after a determination has been made that there was a seizure, "[w]hether

the Amendment was in fact violated. . . requires determining if the seizure was

reasonable."[42]  In determining whether the seizure was objectively reasonable, the

court must examine the totality of the circumstances, balancing "the nature and

quality of the intrusion on the individual's Fourth Amendment interests against the

---

[38]  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206-07 (5th Cir. 2009) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

[39]  *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

[40]  *Shaboon v. Duncan*, 252 F.3d 722, 733 (5th Cir. 2001).  See, also, *Borsarge v. Ms Bureau of Narcotics*, 796 F.3d 435 (5th Cir. 2015); *Stone v. Powell*, 428 U.S. 465, 483 (1976).

[41]  *Stephenson v. McClelland*, 632 Fed. App'x 177, 184 (5th Cir. 2015).

[42]  *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61-62 (1992).

countervailing governmental interests at stake."[43]  This question must be analyzed

from the perspective a reasonable officer on the scene and not with 20/20 hindsight;

the analysis must also allow for "the fact that police officers are often forced to make

split-second judgments – in circumstances that are tense, uncertain, and rapidly

evolving – about the amount of force that is necessary in a particular situation."[44]

Although Slade was under the authority of school officials while he was at

school, the authority exerted by school officials and the authority exerted by law

enforcement officials is very different.  None of the defendants – all of whom are

school officials and none of whom are law enforcement officials – arrested Slade.

Slade was arrested by the school resource officer, an Iberia Parish Sheriff's deputy.

While the defendants gave information to the school resource officer concerning the

incident in question, it was the deputy who had the responsibility for deciding

whether there was probable cause for the arrest.  None of the defendants made that

decision.  Therefore, they cannot be liable for any alleged constitutional violation that

might have occurred.

---

[43]     *Stephenson v. McClelland*, 632 Fed. App'x at 184 (quoting *Graham v. Connor*, 490
U.S. 386, 396-97 (1989)).

[44]     *Stephenson v. McClelland*, 632 Fed. App'x at 184 (quoting *Graham v. Connor*, 490
U.S. at 397.

In this case, there was probable cause for Slade's arrest. The Fourth Amendment provides that citizens have the right to be free from arrests made without probable cause.[45] Thus, to establish that the arrest violated Slade's Fourth Amendment rights, the plaintiffs must demonstrate that there was no probable cause to support his arrest.[46] Probable cause exists when the totality of the facts and circumstances within an official's knowledge at the moment of arrest are sufficient for a reasonable, prudent person to conclude that the suspect has committed, is committing, or is about to commit an offense.[47]

In this case, it is undisputed that there was a melee at school. It is undisputed that Mr. Schlicher claimed that he was hit on the head from behind during the altercation, and it was serious enough that he went to the doctor. The defendants submitted the affidavits of Mr. Landry, Mr. Picheloup, and Mr. Schlicher, as well as the incident report and affidavit prepared by Deputy Stevens. Mr. Landry's affidavit states that he watched the video with Mr. Schlicher and observed the following:

---

[45]     *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir.1994) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

[46]     *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001).

[47]     *Haggerty v. Tex. S. Univ.*, 391 F.3d at 655-56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)); *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

> While Mr. Schlicher was holding JaTory, Slade Maturin, with closed fist readying himself to fight, can be seen walking towards Mr. Schlicher and JaTory. As Mr. Schlicher turned JaTory away, Slade Maturin swung in the direction of JaTory and Mr. Schlicher. Mr. Schlicher turned in that direction immediately looking at Slade Maturin. Slade Maturin remained in a close proximity and then approached them again. Two other students then escorted Slade Maturin away from Mr. Schlicher and Jatory. (Rec. Doc. 28-2 at 27-28).

Mr. Landry further indicated that he spoke with Deputy Stevens before Slade was arrested. (Rec. Doc. 28-2 at 28). Mr. Picheloup's affidavit states that he watched the video with Mr. Schlicher, and they determined that it shows Slade throwing punches toward the back of Mr. Schlicher's head while Mr. Schlicher was restraining Ja'Tory. (Rec. Doc. 28-4 at 18). Mr. Schlicher's affidavit states that he and Mr. Picheloup watched the video and "concluded that it was Slade who had delivered the blow to the back of my head. The clarity of the video tape does not establish contact but does show Slade Maturin throwing the punch while I was restraining JaTory. . . ." (Rec. Doc. 28-2 at 17). Mr. Schlicher stated in his affidavit that he gave Deputy Stevens the same information that is set forth in his affidavit. (Rec. Doc. 28-2 at 17). Deputy Sheriff Ashley Charles Stevens, the school resource officer, reviewed the surveillance tape with Mr. Schlicher. In her report, she said: "Suspect Maturin then aggressively walked towards victim Schlicher and suspect Marks with closed fist and started to

swing his hands in a fighting motion. Victim Schlicher was hit by one of suspect Maturin's strikes." (Rec. Doc. 28-3 at 5). Although Slade told Deputy Stevens and others that he did not throw a punch, that statement is not supported by the videotape. While the videotape does not clearly show Slade's fist actually making contact with Mr. Schlicher's head, it does clearly show Slade punching his fists near Mr. Schlicher's head. While Deputy Stevens may have been mistaken about whether a blow actually connected with Mr. Schlicher, the totality of the facts and circumstances presented to Deputy Stevens at the time of the arrest are such that a reasonable person in her shoes could have concluded that Slade had committed the offenses with which he was charged – disturbing the peace and striking a teacher. This Court therefore concludes that there was probable cause for Slade's arrest. Consequently, this Court concludes that the plaintiffs have not established that there was a Fourth Amendment violation. Therefore, the plaintiffs' individual capacity claims against Mr. Landry and Mr. Picheloup must be dismissed.

## 6. QUALIFIED IMMUNITY

This Court has already noted that it is not necessary to determine whether the defendants are entitled to qualified immunity because they did not arrest Slade. Out of an abundance of caution, however, this Court finds that the individual defendants

would be entitled to qualified immunity and dismissal of the claims against them on that basis if they had been the persons arresting Slade.

Qualified immunity, an affirmative defense to a suit under 42 U.S.C. § 1983, protects government officials in their individual capacity, while performing discretionary functions, not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[48]   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[49] Although qualified immunity is "nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised."[50]  The Supreme Court recently set forth the analysis this Court must follow:

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry.  The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right.
>
> * * * * *

---

[48]  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  See, also, *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

[49]  *Whitley v. Hanna*, 726 F.3d at 638 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[50]  *Poole v. City of Shreveport*, 691 F.3d at 627 (quoting *Brumfield v. Hollins*, 551 F.3d at 326).

The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. Governmental actors are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

\* \* \* \* \*

Courts have discretion to decide the order in which to engage these two prongs. But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. In making that determination, a court must view the evidence in the light most favorable to the opposing party.

Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or seizures, we have instructed that courts should define the "clearly established" right at issue on the basis of the specific context of the case. Accordingly, courts must take care not to define a case's context in a manner that imports genuinely disputed factual propositions.[51]

In the preceding discussion, this Court has already found that the right to be free from false arrest was clearly established at the time of the relevant incident and that this right was not violated because a reasonable person in Deputy Stevens's position could have concluded that Slade disturbed the peace and struck Mr.

---

[51] *Tolan v. Cotton,* ___ U.S. ___, 134 S.Ct. 1861, 1865-66 (2014) (internal quotation marks, brackets, and citations omitted). See, also, *Pratt v. Harris Cty. Tx.,* 822 F.3d 174, 181 (5th Cir. 2016).

Schlicher.  The plaintiffs have not presented evidence sufficient to negate the application of qualified immunity as to any of the individual defendants. Accordingly, even if Mr. Landry and Mr. Picheloup had been the persons arresting Slade – and they were not – they would be entitled to qualified immunity, and the claims against them in their individual capacities would have to be dismissed.

## G.    THE STATE-LAW CLAIMS

This Court has concluded that the plaintiffs' federal-law claims against the defendants should be dismissed, leaving the plaintiffs' state-law claims for false arrest, malicious prosecution, and defamation to be resolved.  Although this fact alone does not divest the court of jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."[52]  "Moreover, the general rule in this circuit is to dismiss state claims when the federal claims they supplement are dismissed."[53]  Therefore, this Court will

---

[52]    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)

[53]    *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999); *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

decline to exercise its supplemental jurisdiction and the plaintiffs' state-law claims asserted against the defendants will also be dismissed without prejudice.

## H.    SUPPORTING FACTUAL POSITIONS

In opposition to the defendants' motion, the plaintiffs argued that there were numerous genuinely disputed material facts, as listed in their statement of material facts in dispute.  (Rec. Doc. 32-2).  But merely stating that a fact is disputed, as the plaintiffs did in their statement, is not sufficient to establish a genuinely disputed factual issue.  Instead, as explained in Fed. R. Civ. P. 56(c)(1), a party asserting that a fact is genuinely disputed must support that assertion by citing to the record or showing that cited materials establish a genuine dispute.  There is not a single record citation in the plaintiffs' statement, and the only exhibit attached to the plaintiffs' opposition is comprised of excerpts from Slade's deposition testimony.  To the extent that Slade's testimony differs from the events shown in the videotape, it is properly disregarded.[54]  The plaintiffs' effort in opposing the defendants' motion for summary judgment fell short of establishing any genuinely disputed issues of material fact.

---

[54]    *Poole v. City of Shreveport*, 691 F.3d at 627 ("A court. . . need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape. (Citations omitted.))

## Conclusion

For the reasons set forth above, this Court finds that there are no genuine issues of material fact in dispute and the defendants are entitled to summary judgment in their favor. Accordingly, the defendants' motion for summary judgment (Rec. Doc. 28) is GRANTED, the plaintiffs' Constitutional claims are DISMISSED WITH PREJUDICE, and the plaintiffs' state-law claims are DISMISSED WITHOUT PREJUDICE.

Signed at Lafayette, Louisiana on this 22nd day of September 2017.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE